**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
|     **Plaintiff,**    ) | |
| ) | 4:18-CR-607-1-AGF |
| **v.**    ) | |
| ) | |
| **VIDAL SHEEN,**    ) | |
| ) | |
|     **Defendant.**    ) | |

**SHEEN'S SENTENCING MEMORANDUM AND**
**MOTION FOR DOWNWARD VARIANCE**

Defendant Vidal Sheen ("Sheen"), by and through his counsel, Justin K. Gelfand, William S. Margulis, and the law firm of Margulis Gelfand, LLC, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. 18 U.S.C. § 3553(a).  Sheen respectfully requests that this Court impose a sentence of probation with a restitution order in the amount of $142,055.58 (which Sheen has already paid).

The 49-year old parent of four who stands before this Court for sentencing has pled guilty to the first criminal conviction he has ever received.  He has fully accepted responsibility for his conduct, is profoundly remorseful for what he has done, and he has already fully paid the $142,055.58 in restitution that the parties anticipate this Court will order at sentencing.  When crafting a sentence in this case, Sheen respectfully asks that this Court see him for who he is: the son of first generation immigrants who instilled in him the need for education; a man who worked his way through college, medical school, and an internal medicine residency at Barnes Jewish Hospital; a dedicated father to his four children—ages 8, 8, 11, and 13—who is regularly supporting his children in their activities ranging from competitive dance to competitive soccer;

and an employer of many hardworking people who rely on his medical practice for income. Now a convicted felon, Sheen faces the possibility of losing his medical license and the embarrassment and shame that accompanies a felony for an accomplished man who has never been so much as arrested. While Sheen appreciates the seriousness of the crime to which he pled guilty, based on his age, background, lack of criminal history, and profoundly positive attributes, Sheen submits that a sentence of probation is "sufficient, but not greater than necessary." *Id*.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Sheen as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

When faced with the possibility of incarceration, it is easy to lose sight of the fact that a sentence of probation is, by no means, lenient. Indeed, as recently as 2007, the U.S. Supreme Court rejected the idea that a sentence of probation is nothing but an overly-lenient slap on the wrist. *See Gall v. United States*, 552 U.S. 38, 44 and n.4 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...[p]robation is not granted out of a spirit of leniency...probation is not merely 'letting an offender off easily.'").

I.      **Procedural Background**

On July 13, 2018, Sheen waived indictment and pled guilty to a one-count Information charging him with Falsification of Records in a Federal Investigation in violation of Title 18,

2

United States Code, Section 1519. Since then, Sheen has remained on bond without a single incident or violation.

## II. Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

## III. Guidelines

Sheen concurs with the Guidelines computations contained within the PSR. Specifically, the base offense level is 14 under U.S.S.G. § 2J1.2. A two-level decrease applies because Sheen clearly demonstrated acceptance of responsibility in a timely manner. U.S.S.G. § 3E1.1(a). As sheen has never been arrested or convicted of any crime prior to this case, Sheen falls into criminal history category I with a total criminal history score of zero. *See* U.S.S.G. Chapter 5, Part A. Prior

3

to any consideration of a downward variance—which the Probation Office appropriately recognizes this Court should consider—the advisory Guidelines range is a sentence of 10-16 months' imprisonment pursuant to Zone C of the Sentencing Table.

### IV.     A Downward Variance is Warranted

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a downward variance is warranted in this case.

Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists seven factors that a sentencing court must consider. Especially relevant to this case, and supportive of this motion for a downward variance, are the following factors:

#### A.     The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)

Sheen was born in Kentucky to two first generation immigrants: his father, age 87, is a retired professor and resides in St. Louis; his mother, who worked as a radiology technician, died in 2010 from cancer.  Sheen is married to Janelle, a 43-year old pharmacist.  Together, they have four children with whom Sheen is very close.

Sheen graduated from high school in Lexington, Kentucky with a GPA of 4.2 (on a 4.0 scale) and matriculated to Johns Hopkins University, where he earned a Bachelor's degree in Biomedical Engineering in 1991.  Sheen then graduated from medical school at the University of Louisville in 1995, and immediately enrolled in, and completed, his medical residency through Washington University School of Medicine at Barnes Jewish Hospital in 1998.  Sheen specializes in phlebology (veins).  Since 2010, Sheen has been the owner of The Sheen Vein Institute and the

South County Medical Institute, which employees numerous people: an office assistant, two ultrasound technicians, an insurance specialist, a nurse practitioner, and an office manager.

Sheen's commitment to charitable endeavors is significant.  In addition to financially supporting the St. Louis College of Pharmacy (his wife's alma mater) through scholarship contributions, Sheen donates medical services for school fundraisers, has provided free and significantly discounted services to patients who could not afford Sheen's services but who needed treatment so they could walk normally, and approximately once per year when feasible, Sheen has closed his office to donate their time to a food pantry in Festus.

Furthermore, Sheen remains a profoundly involved parent to his four wonderful children. Sheen's oldest daughter is a competitive dancer through a dance studio who practices approximately 8-9 hours per week and competes 6-7 times per year in competitions (in town and out of town) that span an entire weekend; she also competes on her middle school dance team which regularly practices and competes (in town and out of town).  Sheen's other three children play competitive soccer—each practicing, competing, and often traveling throughout the year for competitions.  Sheen proudly spends the vast majority of his time out of work caring for and supporting his four young children in their endeavors.

        B.    <u>The Need to Protect the Public from Further Crimes of the Defendant – 18 U.S.C. § 3553(a)(2)(C)</u>

As demonstrated by a lifetime of no arrests or convictions and an unblemished performance on bond during the pendency of this case, Sheen will not commit any further crimes.  Sheen has already suffered the consequences of a felony conviction and he will continue to do so with the possibility of the loss of his medical license.  Put simply, this is not a defendant who will recidivate.

Furthermore, sentencing courts often consider a defendant's age when considering this Section 3553(a) factor. Indeed, there are a number of decisions where courts have given notably

5

less weight to the Sentencing Guidelines in recognition of the fact that older individuals, some as young as 40, are far less likely to commit additional crimes. *See* United States Sentencing Commission, *Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004) (showing that those in the age group of 41 to 50 who fall in criminal history category I have an especially low recidivism rate of 6.9%, as compared to those, for example, in the 36 to 40 years of age bracket who recidivate at a rate of 12.1% and those under age 21 who recidivate at a rate of 29.5%); *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. 2005) (observing that those defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants"). The Sentencing Commission releases such empirical studies precisely so that, in cases such as this, the Court can include these facts in its consideration of a fair sentence.

At age 49, Sheen will not recidivate even if he receives the most lenient sentence possible.

    C. <u>The Kinds of Sentences Available – 18 U.S.C. § 3553(a)(3)</u>

In *Gall*, the U.S. Supreme Court observed that probation, "'rather than an act of leniency,' is a 'substantial restriction of freedom.'" 552 U.S. at 44; *see also Warner*, 792 F.3d at 860 (affirming term of probation as "a sufficiently serious sentence"); *United States v. Coughlin*, No. 06-20005, 2008 WL 313099, at *5 (W.D. Ark. Feb. 1, 2008) (recognizing that "probation can be severe punishments, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive," and that "[n]ot all defendants must be sentenced to imprisonment to be duly punished"); *United States v. Brady*, No. 02-cr-1043 (JG), 2004 WL 86414, at *8 (E.D.N.Y. Jan. 20, 2004) (noting that probation is "a punitive measure"). Congress and the Sentencing Commission have similarly recognized that probation, "a sentence in and of itself," may constitute an appropriate alternative to incarceration that meets fully the statutory purposes of sentencing.

6

USSG, Ch. 5, pt. B, Intro. Cmt. (citing 18 U.S.C. § 3561). Probationers remain subject to "several standard conditions that substantially restrict their liberty," including restraints on their ability to associate freely or to leave the judicial district. *Gall*, 552 U.S. at 48. The Court can also impose a variety of "discretionary conditions" to probation, 18 U.S.C. § 3563(b), and the violation of any condition can be grounds for revocation and the imposition of a term of incarceration.

Nor was probation intended by Congress to be an exceptional kind of punishment. To the contrary, Congress directed more than three decades ago that the Guidelines should reflect the "general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j) (emphasis added). That is precisely the position in which Sheen finds himself. He is a first-time offender who has not been convicted of a crime of violence.

Sheen submits that a sentence of probation is sufficient punishment in this case. Indeed, the felony conviction alone has already hit Sheen hard and the collateral consequences—to his freedom, his reputation, and his career—are real. Sheen has learned his lesson and has accepted responsibility for his conduct.

>       D.     <u>The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)</u>

A sentence of probation in this case would satisfy Congress' mandate that sentencing courts should aspire to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(7). This Court has ready access to numerous defendants with similar records who have been found guilty of similar conduct—and who have received probation.

>       E.     <u>The Need to Provide Restitution – 18 U.S.C. § 3553(a)(7)</u>

Section 3553(a)(7) directs this Court to consider "the need to provide restitution to any

7

victims of the offense." Sheen agreed to the payment of restitution in his plea agreement and has already paid in full the restitution he anticipates this Court will order at sentencing.

   F.   <u>Sentencing Letters</u>

Submitted with this memorandum are sentencing letters for this Court's consideration. *See* Exhibit 1.

Emily Stolzer, who has been an employee of Sheen's for five years, speaks to his commitment as a doctor: "I do firmly believe Dr. Sheen provides exceptional care for his patients and holds their best interest at heart." *Id*. Stacy Brown, who has worked closely with him on a daily basis for 10 years, says, "Dr. Sheen has made it clear in his patient interaction throughout the years, just how important each and every patient is to him and that their wellbeing is his number one priority…. I have worked with many physicians, but never have I worked with one that cares so much and spends so much time with his patients. If all physicians cared about people as much as Dr. Sheen does, healthcare would be in a much better place." *Id*. Dawna Kenkel, who has known sheen for six years, described him a "highly considerate and respectful to his employees and patients" and "well known to be a very devoted family man." *Id*.

Burton Garland, Jr., an attorney and member of this Court's bar, writes:

> This is the first and only time in my legal career I have ever felt compelled to write a letter of this magnitude in support of a criminal defendant. I asked Vidal if I could write this letter because I feel he, his family, and the community will be best served by Vidal avoiding prison time and, hopefully, retaining his medical license on a permanent basis. In short, Vidal, his family, and the community will be better off if Vidal is able to remain an active contributor to the community as a whole.

*Id*.

As this Court will see in the heartfelt letters submitted on Sheen's behalf, this is a man who remains well-respected by his colleagues, friends, and employees—and a man with tremendous value to continue contributing to society.

8

**VI.      Conclusion**

As the age-old adage goes, "justice must be tempered with mercy." Sheen accepts that he is before this Court for sentencing for a serious crime and that this Court must impose a penalty. That is justice. But Sheen also appeals to this Court's discretion to temper that justice with mercy.

Sheen concurs with the Probation Office's recommendation that this Court consider a downward variance in this case. If given the opportunity, Sheen will be exemplary on probation as he has been on bond since his arraignment. He has accepted responsibility for his conduct and aspires to continue to be a remarkable father to his children, husband to his wife, asset to his community, employer to his team, and provider to his patients to the extent he can retain his medical license.

For all of these reasons, Sheen respectfully submits that a sentence of probation is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
WILLIAM S. MARGULIS
ATTORNEYS FOR DEFENDANT
8000 Maryland Avenue, Suite 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
bill@margulisgelfand.com

9

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF system, which will send notice of this filing to all counsel of record including Assistant United States Attorney Andrew Lay.

>*/s/ Justin K. Gelfand*
>JUSTIN K. GELFAND
>WILLIAM S. MARGULIS
>ATTORNEYS FOR DEFENDANT
>8000 Maryland Avenue, Suite 420
>St. Louis, MO 63105
>Telephone: (314) 390-0234
>Facsimile: (314) 485-2264
>justin@margulisgelfand.com
>bill@margulisgelfand.com